**Bonjean Law Group, PLLC**
**750 Lexington Avenue, 9th Floor**
**New York, New York 10022**
**Tel: (718) 875-1850**
**Fax: (718) 230-0582**
jennifer@bonjeanlaw.com
diane@bonjeanlaw.com

**Attorney for Defendant**

---

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, CAMDEN VICINAGE

---

| | | |
|---|---|---|
| **LILI BERNARD** | : | |
| **Plaintiff,** | : | **21-CV-18566 (NLH) (MJS)** |
| **v.** | : | |
| **WILLIAM COSBY,** | : | |
| **Defendant.** | : | |

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION............................................................................................... 1

ARGUMENT

I.   Plaintiff Fails To State A Claim Under The New Jersey Child Sexual Abuse
     Act Where: (1) She Was Not A Minor; (2) Defendant Was Not Convicted of
     Sexual Assault or Any Sex Crime; and (3) Plaintiff Does Not Tie Her Tort
     Claims To A Statutory Cause Of Action.................................................. 5

     A.   Background of the New Jersey Child Sexual Abuse Act and the
          Reviver Amendment.................................................................... 6

     B.   Because Plaintiff Was Not a Minor in August 1990, Plaintiff Does Not
          State a Claim for Sexual Exploitation of a Child or Sexual
          Abuse......................................................................................... 9

     C.   Plaintiff's Complaint Also Fails to State a Claim Because She Does
          Not Allege (Nor Can She) that Defendant Was Convicted of Sexual
          Assault or Another Sex Crime.................................................... 10

     D.   Without Including Facts that Tether her Tort Claims to a Statutory
          Cause of Action, Plaintiff's Common Law Claims Are Time-
          Barred....................................................................................... 13

II.  The Reviver Statute Violates Due Process Where It Is Unconstitutionally
     Vague Both On Its Face And As Applied.................................................. 16

III. The Reviver Amendment Violates Due Process Where It Retroactively
     Deprives Defendant Of His Statute Of Limitations Defense, A Vested
     Right.................................................................................................... 19

IV.  The Reviver Amendment Violates The Ex Post Facto Clause Where It
     Retroactively Extends The Statute Of Limitations And Ties Liability To
     Criminal Conduct................................................................................. 23

     A.   The Ex Post Facto Rule Was Intended To Apply To Both Civil And
          Criminal Laws........................................................................... 23

     B.   The Reviver Amendment Violates The Ex Post Facto Clause Because
          It Is Punitive In Nature.............................................................. 28

CONCLUSION................................................................................................ 31

# <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**

*B.A. v. Golabek*, 18-cv-7523, (D.N.J. Nov. 8, 2021) .................................................................................. 9

*Calder v. Bull*, 3 U.S. 386 (1798) ................................................................................ 23, 24, 25, 28, 29

*Campbell v. Holt,* 115 U.S 629 (1885) .................................................................................................. 22

*Coyle v. Salesians of Don Bosco*, 2021 N.J. Super. Unpub. LEXIS 1635, July 2021 ...................... 9, 21

*D.D. v. Stockton Univ.,* 2019 U.S. Dist. LEXIS 124821 ........................................................................ 13

*DeVeau v. Braisted,* 363 U.S. 144 (1960)............................................................................................... 31

*Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814 (Me. 1980)........................................................... 19

*Doe v Diocese of Dallas*, 917 N.E.2d 475 (Ill. 2009) ........................................................................... 20

*Doe v. Archdiocese of Phila.*, 2021 U.S. Dist. LEXIS 38426 (E.D. Pa. Mar. 2, 2021)............................ 9

*Doe v. Roman Catholic Diocese*, 862 S.W.2d 338 (Mo. 1993) .............................................................. 20

*Frideres v. Schiltz,* 540 N.W.2d 261 (Iowa 1995) ................................................................................ 19

*Gavin v. Bd. of Educ.*, 2021 U.S. Dist. LEXIS 52115 (D.N.J. Mar. 18, 2021) ....................................... 9

*Hardwicke v. American Boychoir School*, 188 N.J. 69 (2004) ...................................... 6, 7, 13, 14, 15, 16

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952).................................................................................... 28

*Johnson v. Garlock, Inc.*, 682 So.2d 25 (Ala. 1996) .............................................................................. 19

*Johnson v. Lilly*, 823 S.W.2d 883 (Ark. 1992)....................................................................................... 19

*Jordan v. City of Philadelphia,* 66 F. Supp. 638 (E.D. Pa. 1999) ............................................................ 4

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) ................................................... 23, 28, 29, 30, 31

*Landgraf v. Usi Film Prods.*, 511 U.S. 244 (1994) .................................................................. 30

*Lopez v. Swyer*, 62 N.J. 267 (1973) ....................................................................................... 20

*Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F. 2d 966 (2d Cir. 1985) ..................... 31

*Mitchell v. Roberts*, 469 P.3d 901 (Utah 2020) ....................................................................... 20

*O'Connell v. State*, 171 N.J. 484, 795 A.2d 857 (2000) ......................................................... 11

*R.A. a Fictitious Designation v. W. Essex Reg'l Sch. Dist. Bd. of Educ.*, 2021 N.J. Super. Unpub. LEXIS 1951 (Super. Ct. App. Div. Aug. 30, 2021) ................................................... 9

*Roark v. Crabtree*, 893 P.2d 1058 (Utah 1995) ...................................................................... 20

*Rosedale v. Rosehill Cemetary Ass'n v. Twp. of Reading,* 510 F. Supp. 3d 250 (D.N.J. 2020) ............ 16

*Schmidt v. Skolas,* 770 F. 3D 241 (3d Cir. 2014) .................................................................... 4

*Sessions v. Dimaya,* 138 S. Ct. 1204 (2017) ................................................................. 16, 17

*Sliney v. Previte,* 473 Mass. 284 (2015) ................................................................................. 20

*Smith v. Doe*, 538 U.S. 84 (2003) ........................................................................................... 28

*State of Minnesota ex rel. Hove v. Doese*, 501 N.W.2d 366 (S.D. 1993).................................. 20

*State v. Hester*, 233 N.J 381 (N.J. 2018) ................................................................................ 23

*Stogner v. California*, 539 US 607 (2003).................................................................................. 25

*SY v. Roman Catholic Diocese*, 2021 U.S. Dist. LEXIS 188333 (D.N.J. Sep. 30, 2021) ........................ 9

*Twiss v. State*, 124 N.J. 461 (1991) ........................................................................................ 19

*United States v. Marion*, 404 U.S. 307 (1971)........................................................................... 26

*Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S. Ct. 2882 (1976)............................... 31

iii

*W.F. v. Roman Catholic Diocese of Paterson*, 2021 U.S. Dist. LEXIS 111062
(D.N.J. June 7, 2021)................................................................................................ 9, 21

*W.H. v. R.C.*, 2020 U.S. Dist. LEXIS 37060 (D.N.J. Mar. 4, 2020) ........................................ 9

*W.S. v. Hildreth*, 2021 N.J. Super. LEXIS 145 (Super. Ct. App. Div. Dec. 21, 2021)............................ 9

## **STATUTES**

New Jersey Statute § 2A:14-2b ................................................................. 1, 5, 8, 10, 15, 18, 30

New Jersey Statute §2C-2(c)(1) ................................................................................................ 11

New Jersey Statute §2C-2(c)(3) ................................................................................................ 11

## **OTHER AUTHORITIES**

Evan C. Zoldan, *The Civil Ex Post Facto Clause*, 2015 Wis. L. Rev. 727 (2015).................................. 24

Jane Harris Aiken, *Ex Post Facto in the Civil Context: Unbridled Punishment*,
81 Ky. L.J. 323 (1993) ............................................................................................................ 26

Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J.
1672., 1781-82 (2012) ............................................................................................................ 22

## **RULES**

Federal Rule of Civil Procedure12(b)(6)................................................................................ 1, 4, 31

## **CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. 1 .................................................................................................................... 23

**INTRODUCTION**

Defendant William Cosby, by and through his counsel the Bonjean Law Group moves to dismiss Plaintiff Lili Bernard's Complaint pursuant to Federal Rule of Civil Procedure12(b)(6). Plaintiff attempts to bring personal injury claims against Defendant for assault, battery, false imprisonment, and a derivative claim of intentional infliction of emotional distress, stemming from an alleged incident that occurred in and around July 1990 in Atlantic City, New Jersey. To avoid the statute of limitations bar to her 30-year-old claims, Plaintiff invokes the so-called "reviver amendment" to the New Jersey Child Sexual Abuse Act ("CSAA"), claiming that the amendment permits her bring her tort claims outside the statute of limitations. New Jersey Statute § 2A:14-2b ("reviver amendment")

The reviver amendment did not create any substantive causes of action, but rather, opened a two-year window for injuries resulting from either "the commission of sexual assault or any other crime of a sexual nature" or child sexual abuse or exploitation *as defined by* the statute. Plaintiff cannot avail herself of the statute without alleging that the incident resulted in Plaintiff's conviction for sexual assault or another crime of a sexual nature, and/or without pleading her age at the time of the alleged incident. Because Plaintiff's Complaint does not (and could not) allege that Defendant was convicted of sexual assault or any other crime of a sexual nature as defined by the New Jersey criminal code, and Plaintiff was not a minor in July 1990 (and therefore could not plead she was), the reviver amendment cannot save her untimely claims. Accordingly, Plaintiff's Complaint must be dismissed.

Even *if* Plaintiff invoked the reviver amendment as the New Jersey Legislature intended, her claims fail because the reviver amendment is unconstitutional on Due Process and *ex post facto* grounds. Enacted in 2019, the amendment purports to open a two-year window to all claims that fall under its purview. But as applied to anyone other than a defendant who was convicted of sexual assault or who is alleged to have committed sexual abuse of a minor as defined by the statute, it is unconstitutionally vague because it does not define "crime of a sexual nature" or set out any standards by which to determine that a person without a criminal conviction could have *committed* sexual assault or crimes of a sexual nature.

In addition, the reviver amendment violates Defendant's federal and state constitutional rights, because it purports to retroactively re-open a statute of limitations on claims that have been barred for nearly two decades. Under the Due Process clauses of the United States and New Jersey Constitutions, Defendant has a vested right in the statute of limitations defense, which ripened 27 years before the reviver amendment went into effect.

Lastly, the reviver amendment is clearly an *ex post facto* law that seeks to inflict additional punishment on Defendant than what was available under the law at the time of the alleged event. Where the statute on its face requires a civil court to determine that a Defendant committed a crime (under some unknown standard of proof) as a prerequisite to determining whether the claims are timely filed, the reviver amendment violates the *ex post facto* clauses of the United States and New

2

Jersey constitutions. Because the reviver amendment is unconstitutionally vague, deprives Defendant of vested rights, and violates *ex post facto* principles, Plaintiff's Complaint must be dismissed.

To the extent that Plaintiff's Complaint attempts to plead claims other than the incident that allegedly occurred in 1990 in Atlantic City, those claims must also be dismissed where Plaintiff fails to plead sufficient facts, such as where the incident occurred or when the incident occurred, to show that she is entitled to relief.

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff's Complaint attempts to use the reviver amendment to the Child Sexual Abuse Act ("CSAA") to bring personal injury claims for assault, battery, intentional infliction of emotional distress, and false imprisonment that, even if true, would have accrued more than 30 years ago. Dkt. 1 at ¶¶37-61. According to the Complaint, Plaintiff met Defendant on the set of the Cosby show. *Id.* at ¶9. In or about July of 1990 at an unnamed location, Defendant grabbed her breasts. *Id.* at ¶13. Sometime during the next month, in or about August of 1990, Plaintiff went with Defendant to New Jersey to meet with a producer. *Id.* at ¶¶15-16. Although the Complaint does not state as much, public records reflect that in August 1990, Plaintiff was 26 years old.[1]

---

[1] Although Plaintiff does not provide her date of birth, Plaintiff's date of birth is a matter of public record. Plaintiff was 26 years at the time of the alleged incident in August 1990. *See* https://twitter.com/lilibernard/status/1360507278734970880?lang=en ; https://www.famousbirthdays.com/people/lili-bernard.html ; https://allfamous.org/people/lili-bernard-n1za.html

While in a hotel suite in New Jersey, Plaintiff allegedly drank something provided by Defendant and subsequently began to feel dizzy and sick, vomited, and lost consciousness. *Id.* at ¶¶ 20-22. At some point while she was going in and out of consciousness, she states that Defendant undressed and "vaginally rap[ed] her with his penis." *Id.* at ¶¶ 23-25. Without stating when or where, the Complaint also states that Defendant "sexually assaulted, battered and drugged Ms. Bernard on additional occasions." *Id.* at ¶ 30.[2]

## **LEGAL STANDARD**

The issue of the sufficiency of a pleading may be raised by the filing of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Jordan v. City of Philadelphia,* 66 F. Supp. 638, 641 (E.D. Pa. 1999) In resolving a Rule 12(b)(6) motion, the courts are to primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Id.* In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn in the light most favorable to the plaintiff. *Id.* In this circuit, a statute of limitations defense may be raised by a motion under Rule 12(b)(6) "only if the 'the time alleged in the statement of a claim shows that cause of action has not been brought within the statute of limitations.'" *Schmidt v. Skolas,* 770 F. 3D 241,

---

[2] To the extent Plaintiff intends to state any claim with regard to the breast-grabbing incident in paragraph 13 or the conclusory allegations in paragraph 30, she fails to state enough facts to put defendant on notice as what those claims are, whether the venue is proper, and what statute of limitations applies.

249 (3d Cir. 2014). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Id.*

## ARGUMENT

I. **Plaintiff Fails To State A Claim Under The New Jersey Child Sexual Abuse Act Where: (1) She Was Not A Minor; (2) Defendant Was Not Convicted of Sexual Assault or Any Sex Crime; and (3) Plaintiff Does Not Tie Her Tort Claims To A Statutory Cause Of Action.**

Plaintiff's Complaint alleges state tort claims of assault, battery, false imprisonment, and intentional infliction of emotional distress. The statute of limitations for such claims is two years. N.J.S. § 2A:14-2. According to the Plaintiff's Complaint, the claims accrued on some unknown date in August 1990, meaning the claims are clearly time-barred by almost 30 years. However, Plaintiff attempts revive these claims by invoking the 2019 reviver amendment to the CSAA.

By its terms, the reviver amendment applies to "an action at law for an injury resulting from: (1) the commission of sexual assault, [or][3] any other crime of a sexual nature," and/or (2) "a prohibited sexual act as defined in 2A:30B-2" ["Actions by Victims of Sexual Exploitation of a Child"] or (3) "sexual abuse as defined in 2A:61B-1." § 2A:14-2b. To invoke the reviver amendment, Plaintiff must show that

---

[3] Inserting "or" in this portion of the amendment is appropriate both because construction of the sentence warrants it and because, in the other reviver amendment to the CSAA, added at the same time as the amendment at issue here, "or" is included. Section 2A:14-2a-2(b)(1) reads, "every action for an injury resulting from the commission of a sexual assault *or* any other crime of a sexual nature against a person 18 years of age or older."

her injuries resulted from one of the three criteria expressed in the statute. Because Plaintiff was an adult in August 1990, she cannot invoke the amendment by alleging that her injuries resulted from sexual exploitation of a child or sexual abuse as defined in 2A:30B-2 or 2A:61B-1. Furthermore, because Plaintiff did not, and cannot, allege that Defendant was convicted of sexual assault or another crime of a sexual nature, stemming from the alleged 1990 incident, she cannot avail herself of the reviver amendment. Accordingly, her common-law claims are time-barred. Since there is no relief that could be granted to Plaintiff, her Complaint must be dismissed.

A.  **Background of the New Jersey Child Sexual Abuse Act and the Reviver Amendment**

In 1992, the New Jersey legislature enacted the CSAA, creating a civil statutory remedy for sexual abuse, defined as "an act of sexual contact or penetration between a child under the age of 18 years and an adult." 1992 N.J. Laws 109. The CSAA was significant because it created a new cause of action for people subjected to sexual abuse as children, who had previously been limited in civil court to common-law tort actions, which have a two-year statute of limitations in New Jersey. *See Hardwicke v. American Boychoir School*, 188 N.J. 69, 84-85 (2004). "Because of the unique nature of sexual abuse, which may only be discovered by an adult victim after years of repression," the bill provided that a civil suit pursuant to the statute would accrue at the time of "reasonable discovery to the injury and its causal relationship" to the underlying act of abuse. *Id.* at 85.

Since its passage, the New Jersey Legislature has amended the CSAA three times. 1999 N.J. Laws 393, 2004 N.J. Laws 130, 2019 N.J. Laws 120. Almost all these changes have clarified and expanded liability and civil procedures in cases of child victims. The 1999 amendments clarified that the state of limitations could be tolled after a plenary hearing that could be conducted outside the presence of a jury. 1999 N.J. Laws 393 Section 1(5)(c). The 2004 amendment incorporated the definitions of the CSAA to apply to child protective services. 2004 N.J. Laws 130.

In the *Hardwicke* decision, the New Jersey Supreme Court clarified liability for child sexual abuse under the CSAA. Importantly, the Court considered, *inter alia,* whether plaintiffs could use the expanded statute of limitations in the CSAA to bring, any and all, common-law torts claims in addition to statutory actions for sexual abuse. *Id.* at 99-100. The Court answered the question in the negative, holding that in order for a common-law tort to proceed under the CSAA, it had constitute "conduct that falls within the definition of sexual abuse" under the statute. *Id.* at 100. In other words, a common law claim could only proceed under the liberal tolling provision provided by the CSAA if it was anchored in the statutory cause of action created by the Act. *See id.*

In 2019, the Legislature again amended the CSAA, in part responding to and incorporating the *Hardwicke* decision by removing the language that adults standing *in loco parentis* would have to be "within a household," and expanding liability for non-profit corporations, religious organizations, and others. *See* 2019 N.J. Laws 120 § 2A:61B-1-1(a)(1) and § 2A:53A-7-1a(c) *and* Senate Judiciary

Statement to Senate Subcommittee (March 7, 2019) Section 4, (discussing expanding liability to schools in response to *Hardwicke*). In addition, the Legislature expanded the statute of limitations in cases of child sexual abuse, and for the first time included civil actions for people who experienced sexual misconduct as adults. § 2A:14-2a and 14-2b.

The new statutes of limitations in the CSAA are set out in two sections. Section 2:14-2a allows a person who was sexually abused as a minor to bring a cause of action "within 37 years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury," and allows a person who was "18 years of age or older" to bring an action "within seven years from the date of reasonable discovery of the injury." § 2A:14-2a. In addition, the reviver amendment,[4] at issue here, opened a two-year window for the filing of claims without regard to the "reasonable discovery" rule:

> C.2A:14-2b Commencement of actions regardless of the statute of limitations
>
> 9.a. Notwithstanding the statute of limitations provisions of N.J.S.2A:14-2, section 2 of P.L.2019, c.120 (C.2A:14-2a), section 1 of P.L.1964, c.214 (C.2A:14-2.1), or any other statute, an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c.120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date. § 2A:14-2b.

---

[4] Both of these amendments, § 2A:14-2a and § 2A:14-2b, revive the statute of limitations for the same causes of action and thus both could be properly referred to as "reviver amendments." See § 2A:14-2 and § 2A:14-2b. Many of the arguments herein could apply to both these sections. However, since only one is at issue here, the term "reviver amendment" used herein refers to § 2A:14-2b, the two-year window purporting to apply to all claims.

The reviver amendment is the only portion of the CSAA that Plaintiff cites in her complaint. As of this filing, there have been nine written opinions interpreting the CSAA since the 2019 amendments came into effect, all in cases involving minors.[5] Plaintiff in this case was not a minor at the time of the alleged incident. Thus, this motions appears to raise issues of first impression.

**B.    Because Plaintiff Was Not a Minor in August 1990, Plaintiff Does Not State a Claim for Sexual Exploitation of a Child or Sexual Abuse.**

As explained above, Plaintiff appears to be one of the first individuals to bring a cause of action under the reviver amendment since its effective date of December 1, 2019 who attempts to apply the CSAA without an allegation that she was a minor at the time of the events underlying her Complaint. Since the original purpose of the Act was to redress child sexual abuse (as demonstrated by the name of the statute itself, "Child Sexual Abuse Act") this is no small factual insufficiency.

The reviver amendment explicitly cites to two statutory claims that would allow plaintiff to benefit from its new statute of limitations: Sections 2A:30B-2 ("sexual exploitation of a child") and 2A:61B-1 ("sexual abuse"). § 2A:14-2b. A necessary element of both these claims is that the claimant be under 18 years old at

[5] *See SY v. Roman Catholic Diocese*, 2021 U.S. Dist. LEXIS 188333 (D.N.J. Sep. 30, 2021)); *B.A. v. Golabek*, 18-cv-7523, (D.N.J. Nov. 8, 2021); *Gavin v. Bd. of Educ.*, 2021 U.S. Dist. LEXIS 52115 (D.N.J. Mar. 18, 2021); *W.F. v. Roman Catholic Diocese of Paterson*, 2021 U.S. Dist. LEXIS 111062 (D.N.J. June 7, 2021); *Doe v. Archdiocese of Phila.*, 2021 U.S. Dist. LEXIS 38426 (E.D. Pa. Mar. 2, 2021); *W.H. v. R.C.*, 2020 U.S. Dist. LEXIS 37060 (D.N.J. Mar. 4, 2020); *W.S. v. Hildreth*, 2021 N.J. Super. LEXIS 145 (Super. Ct. App. Div. Dec. 21, 2021); *R.A. a Fictitious Designation v. W. Essex Reg'l Sch. Dist. Bd. of Educ.*, 2021 N.J. Super. Unpub. LEXIS 1951 (Super. Ct. App. Div. Aug. 30, 2021); *Coyle v. Salesians of Don Bosco*, 2021 N.J. Super. Unpub. LEXIS 1635, July 2021.

9

the time of the alleged acts. N.J.S. § 2A:30B-2 and 2A:61B-1. Under New Jersey law, "'sexual abuse' means an act of sexual contact or penetration between a child under the age of 18 and an adult." § 2A:61B-1. Likewise, sexual exploitation of a child requires that the victim be "any person under 18 years of age." § 2A:30B-2. Plaintiff does not state her age in 1990, but public records show that she was 26 years of age at the time of the alleged events. Even though Plaintiff purports to bring an action for "sexual abuse" and states that Defendant was "sexually abusing" her five times in the complaint, Plaintiff cannot successfully plead a claim for sexual abuse (or sexual exploitation of a child) given her adult age in August 1990. *See* Dkt. 1 at ¶ ¶ 8, 17, 18, 32, 33 and 34.

### C.     Plaintiff's Complaint Also Fails to State a Claim Because She Does Not Allege (Nor Can She) that Defendant Was Convicted of Sexual Assault or Another Sex Crime.

Plaintiff further fails to state a claim because she does not allege that Defendant was convicted of sexual assault or any other crime against her.[6] By the terms of the reviver amendment, a plaintiff must either have been a minor or must assert "an injury resulting from the *commission* of sexual assault, [or] *any other crime* of a sexual nature." N.J.S. §2A:14-2b. Sexual assault is not defined in the CSAA nor in any other statute other than the in the New Jersey criminal code, which is what the amendment clearly references by using the word "crime." *See id.*

---

[6] Plaintiff attempted to file a criminal complaint against Mr. Cosby in connection with underlying events, but the office of the Atlantic City Prosecutor declined to prosecute and closed the case. https://www.inquisitr.com/2218110/bill-cosby-will-not-face-charges-over-drug-and-rape-allegations-made-by-former-cosby-show-actress/

and N.J.S. § 2C:14-2. Plaintiff does not allege that Defendant was convicted of a crime against her. Rather, she alleges four common law torts. Dkt. 1 at ¶¶ 37-61. Under the plain language of the statute, Plaintiff cannot avail herself of the reviver amendment.

When interpreting a statute, New Jersey law demands that it begin with "an examination of the plain language of the statute." *O'Connell v. State*, 171 N.J. 484, 795 A.2d 857, 859 (2000) "Where a statute is clear and unambiguous on its face," a "court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by the plain language." *Id.*

On its face, the reviver amendment is only applicable when a defendant has *committed* a "sexual assault" or a "crime of a sexual nature." The term "commission of a crime" under New Jersey criminal law means an act for which a person is found guilty and convicted. Under the definition of sexual assault in the criminal code a defendant is "guilty" if he "committed" an act: "An actor *is guilty* of aggravated sexual assault *if the actor commits* an act of sexual penetration with another person under any of the following circumstances..." §2C:14-2-a. In other words, "commission" of an act is synonymous with criminal guilt. *See id.* Indeed, general criminal culpability in the New Jersey code is triggered by "commission of an offense." N.J.S. §2C-2(c) (1) & (3). Notably, the drafters used the word "commission" and "conviction" interchangeably in the New Jersey Criminal section entitled "Construction of Statutes with Respect to Culpability Requirements." *See*

11

*id*. Where it states,"[w]hen the law defining an offense prescribes the kind of culpability that *is sufficient for the commission on an offense*..." it means "culpability" that is "sufficient" to *convict* a person of the offense. *See id*.

In addition, the sentencing statute in New Jersey uses the term "commission" as the qualifier for sentencing enhancements once a person has been convicted, i.e. "A person who has been convicted of an offense enumerated in this subsection who used or possessed a machine gun or assault firearm during its *commission, attempted commission*, or flight therefrom..." N.J.S § 2C:43-6(g) (*see also* subsection c). Meaning that once a person is convicted, they can be said to have committed the underlying acts. *See id*. In these and other criminal statutes, and throughout New Jersey case law, the term "commission of a crime" means a criminal conviction. *See also e.g.* N.J.S. §2C:52-3-b (describing "convictions" as "offenses" that were "committed" for expungement purposes).

The reviver amendment does not state that the look-back window may be triggered by allegations or claims of defined conduct as it could. Rather, it clearly states that the amendment is triggered when a sexual assault or other *crime* of a sexual nature is *committed*. The Court should not re-write the statute or presume that the legislature intended something other than what the plain language states. For liability to attach, the plaintiff's injury must have resulted from the commission of a crime. Since Plaintiff does not allege Defendant has been criminally convicted in connection with case at bar, she fails to state a claim.

To the extent that Plaintiff alleges facts that, if proven beyond a reasonable doubt in a criminal trial, would constitute a crime, she still does not state a claim upon which relief can be granted because this Court, as a federal court sitting in diversity over a civil action, does not have the authority to find that Defendant committed a crime against Plaintiff. A declaration that Defendant committed a crime in the absence of the safeguards of the criminal process—which would require not only a different standard of proof but a different burden of proof, the government to be a party, different evidentiary rules, and the right to a 12-person jury—would violate Defendant's Due Process rights. Without a judgment by a criminal court finding Defendant guilty of a crime against Plaintiff, she fails to state a claim under the reviver amendment.

### D. Without Including Facts that Tether her Tort Claims to a Statutory Cause of Action, Plaintiff's Common Law Claims Are Time-Barred.

Plaintiff's Complaint also fails because she does not allege conduct defined by the CSAA, namely sexual abuse or sexual exploitation of a child. Because Plaintiff's personal injury claims are not based on conduct that amounts to child sexual abuse or exploitation (because Plaintiff was not a minor), her personal injury claims are time-barred. *See D.D. v. Stockton Univ.,* 2019 U.S. Dist. LEXIS 124821,*11. Plaintiff invokes the CSAA to bring her claims, but the New Jersey Supreme Court has said that the CSAA applies only to torts that fall under the statute. *Hardwicke,* 188 N.J. at 101, n.12.

In *Hardwicke*, the New Jersey Supreme court considered whether the plaintiff could seek damages on claims of intentional and negligent infliction of

emotional distress, assault and battery, and false imprisonment, where he claimed to have been sexually abused by a school director when he was 12 years old. *Id.* at 75-80. The trial court denied the common law claims on the basis that the plaintiff did not state a cause of action under the CSAA since the Defendant school did not qualify as a "person" under the Act. *Id.* at 80. In other words, the trial court held the plaintiff needed to first establish that the claim *triggered* the statute before tethering it to common law torts. The appellate court reversed, adopting a broader definition of "person," and allowed all claims to proceed. *Id.* at 84.

However, on appeal, the New Jersey Supreme Court carefully considered whether the plaintiff had a statutory cause of action and which claims could proceed. The supreme court held that the common law tort claims could proceed because they were "based on conduct that falls within the definition of sexual abuse," which was a statutory cause of action created by the CSAA. *Id* at 100. The court further stated, "[t]o the extent that the principal opinion below may suggest the liberal tolling provisions of the statute apply to common-law causes of action based on conduct not within the definition of sexual abuse found in the CSAA, we disagree." *Id.* at n.12. With that, the majority[7] made it clear that for a common-law tort to benefit from the statutory tolling of the CSAA, the plaintiff must first

---

[7] In his dissent, Judge Rivera-Soto agreed that common-law claims could be tethered to sexual abuse under the CSAA, but emphasized further "the Legislature did not intend the CSAA's tolling provisions to apply to every conceivable common-law tort." He further stated, "In light of the strong policy considerations that ungird the application of statutes of limitations…the reach of the CSAA's tolling provision cannot be extended beyond those actions that fit the statutory definition of sexual abuse." *Hardwicke,* 188 N.J. at 113 (J. Rivera-Soto, dissenting).

identify a statutory cause of action from the CCSA, and then establish that the common law tort falls within the statutory definition of that cause of action.

As the court noted, the CSAA states "in any civil action for an injury or illness *based on sexual abuse*, the cause of action shall accrue..." *Id.* The court emphasized, "'the statute does not state: 'in any civil action for injury or illness *arising under this Act." Id.* Plainly stated, the CSAA required that a cause of action be "based on" sexual abuse in order qualify for the statute of limitations in the Act. *Id.* While the legislature amended the CSAA after *Hardwicke*, and even cited the *Hardwicke* opinion in doing so, it left the phrase "based on sexual abuse" unchanged. *See* N.J.S. § 2A:61B-1b *and* Senate Judiciary Statement to Senate Subcommittee (March 7, 2019) Section 4. Further, the language it inserted in the reviver amendment has a similarly narrow structure, stating: "an action at law for an injury *resulting from* the commission of sexual assault, any other crime of a sexual nature..." *See* § 2A:14-2b and § 2A:14-2a(a)(1) and (b)(1). Had the legislature wanted to extend the statute of limitations on all torts that have any sexual element, it could have done so using broader or different language to accomplish that result. As written, the reviver statute requires a claim to be tethered to a statutory cause of action either "based on sexual abuse" or "resulting from" the commission of a crime. *See id.*

The *Hardwicke* decision makes it clear that Plaintiff Bernard must establish a statutory cause of action under the CSAA before tethering time-barred common law torts to the statute of limitations established in the reviver amendment. Since

she has failed to allege sexual abuse or any other statutory basis for reviving her common-law tort claims, her complaint should be dismissed because the statute of limitations on those torts has passed.

## II.     The Reviver Statute Violates Due Process Where It Is Unconstitutionally Vague Both On Its Face And As Applied.

Reading the reviver amendment as not requiring the Plaintiff to assert that she was a minor at the time of the alleged incident or that the Defendant has been convicted of sexual assault or a *crime* of a sexual nature would render it void for vagueness. The language, "an action at law for an injury resulting from the commission of a sexual assault, [or] any crime of a sexual nature" is not defined anywhere in the CSAA and is vague both on its face and as applied to anyone who has not been convicted of the crime of sexual assault in a criminal court.

The doctrine of vagueness "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya,* 138 S. Ct. 1204, 1212 (2017). Civil laws that are vague can violate Due Process just as criminal laws can. *Rosedale v. Rosehill Cemetary Ass'n v. Twp. of Reading,* 510 F. Supp. 3d 250, 262 (D.N.J. 2020). Vagueness can be a facial challenge or as applied. *Id.* at 259.

Following the reasoning in *Hardwicke*, Defendant concedes that if he had been convicted of the crime of sexual assault against Plaintiff the reviver amendment's language would unambiguously apply to common law tort actions that fell within that crime's definition, just as torts that fell within the definition of

16

sexual abuse can be brought by minor plaintiffs. *See Hardwicke*, *supra*. However, the amendment as applied to any other set of facts is vague, and the remainder of its language is vague on its face. It provides no definition of "sexual assault" or "any crime of a sexual nature" and no guidance for this court to determine what standard of proof or type of conduct must be found for it to determine the injury resulted from the "commission" of a crime in the absence of a criminal conviction.

While the term "sexual assault" is defined in the criminal code, the CCSA does not utilize or reference that definition in the statute, nor does the CCSA separately define "sexual assault."  According to Merriam-Webster, "sexual assault" can mean "any illegal sexual contact." The term sexual assault in the CCSA does not identify what specific "illegal sexual contact" would have to be *committed* to trigger the reviver amendment.

The phrase "any other crime of a sexual nature" contained in the statute is even more vague. In *Sessions*, the Supreme Court analyzed whether the phrase "crime of violence" in the Immigration and Nationality Act ("INA") was void-for-vagueness where the INA defined it as felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Sessions,* 138 S. Ct. at 1211. In interpreting the INA, courts had to look at the "nature of the offense" in general and ask whether the offense posed a risk of physical force in the "ordinary case." *Id.* The Court held that "crime of violence" was unconstitutionally vague because it required courts to engage in "a judge-imagined abstraction" by picturing "the kind of conduct

that the crime involves in the 'ordinary case'", and then "to judge whether that abstraction" presented a "not-well-specified-yet-sufficiently-large degree of risk." *Id.* at 1216.

In the same way, courts interpreting the reviver amendment will have to abstract from the language "commission of...any other crime of a sexual nature" what elements make conduct sufficiently of a "sexual nature" for reviver statute to apply. Does it require physical contact, or would public indecent exposure or voyeurism qualify? What about misdemeanor assaults where a breast was grazed? Fraud or trespassing convictions that relate to attempted crimes? To interpret the statute would require this Court to insert its own definitions, and then abstract from that the elements required for liability, more vagueness than the Due Process clause permits.

The doctrine of vagueness prohibits courts from re-writing statutes. The reviver amendment does not simply leave a gap as to what conduct triggers liability, it specifically ties liability to "commission" of crimes. § 2A:14-2b. To apply its language to someone who was not convicted of a crime requires this Court to re-write the statute by constructing a rule for how it can determine in a civil court that a person committed a crime. Without legislative guidance on how to make this determination, the amendment is void-for-vagueness both on its face and as applied to Plaintiff complaint.

18

**III.  The Reviver Amendment Violates Due Process Where It Retroactively Deprives Defendant Of His Statute Of Limitations Defense, A Vested Right.**

By operating to retroactively divest Defendant of a statute of limitations defense he had prior to Plaintiff's claims, the reviver amendment violates his Due Process rights under the United States and New Jersey Constitutions. Statutes are presumed to operate prospectively because "fundamental fairness suggests that government give prior notice of a statute so citizens may conform their behavior." *Twiss v. State*, 124 N.J. 461, 466 (1991). Where a legislature indicates that a statute should operate retroactively it violates Due Process if it unconstitutionally interferes with "'vested rights' or will result in a 'manifest injustice.'" *Id*. at 467. The reviver amendment, if it operates to retroactively divest Defendant of what was, at the time of the alleged act, an absolute defense to the tort claims at bar, takes away the vested right of that defense. Consequently, it violates the Due Process clauses of the United States and New Jersey Constitutions and should be struck down.

The majority of State courts to address the issue have held that once a statute of limitations has run, the defense of that statute is a vested right that cannot be taken away through legislative action.[8] This has been true with other

---

[8] *Johnson v. Garlock, Inc.*, 682 So.2d 25, 27-28 (Ala. 1996); see also *Johnson v. Lilly*, 823 S.W.2d 883, 885 (Ark. 1992) ("[W]e have long taken the view, along with a majority of the other states, that the legislature cannot expand a statute of limitation so as to revive a cause of action already barred."); *Frideres v. Schiltz,* 540 N.W.2d 261, 266- 67 (Iowa 1995) ("[I]n the majority of jurisdictions, the right to set up the bar of the statute of limitations, after the statute of limitations had run, as a defense to a cause of action, has been held to be a vested right which cannot be taken away by statute, regardless of the nature of the cause of action."); *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816-17 (Me. 1980) ("The authorities from other jurisdictions are generally in accord with our conclusion" that running of the statute of limitations creates a vested right); *Doe v. Roman Catholic*

statutes reviving claims for childhood sexual abuse. *Doe v. Roman Catholic Diocese*, 862 S.W.2d 338, 341-42 (Mo. 1993), *Mitchell v. Roberts*, 469 P.3d 901, 913 (Utah 2020), *Doe v Diocese of Dallas*, 917 N.E.2d 475, 481 (Ill. 2009). Statutes of limitations are primarily enacted to ensure fairness, because it is "unjust...to compel a person to defend a lawsuit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost." *Lopez v. Swyer*, 62 N.J. 267, 274 (1973). The reviver amendment, if it revives claims from any time period, is manifestly unfair to Defendant, who is forced to defend himself against an allegation from 30 years ago, where any evidence he may have once had is most certainly gone, witnesses have died or disappeared, and memories faded.

While the recent decisions in New Jersey and before this Court have rejected the argument that New Jersey's constitution protects against retroactive divestment of a statute of limitations defense, they have done so only in the cases of child victims, while explicitly relying on policies that apply to children who suffered abuse. The New Jersey legislature, like many state legislatures, have enacted retroactive amendments because victims of *child abuse* are not able to appreciate the extent or cause of harm they experience for many years after the abuse has ended. *Sliney v. Previte,* 473 Mass. 284, 295 (2015). These reviver amendments are

---

*Diocese*, 862 S.W.2d 338, 341-42 (Mo. 1993) (recognizing constitutional prohibition of legislative revival of a time-barred claim "appears to be the majority view among jurisdictions with constitutional provisions"); *State of Minnesota ex rel. Hove v. Doese*, 501 N.W.2d 366, 369-71 (S.D. 1993) ("Most state courts addressing the issue of the retroactivity of statutes have held that legislation which attempts to revive claims which have been previously time-barred impermissibly interferes with vested rights of the defendant, and this violates due process."); *Roark v. Crabtree*, 893 P.2d 1058, 1062-63 (Utah 1995) ("In refusing to allow the revival of time-barred claims through retroactive application of extended statutes of limitations, this court has chosen to follow the majority rule.").

designed to address this specific and unique public policy concern and cure the procedural defect in the legal system specific as to *child* victims. *See, e.g., W.F. v. Roman Catholic Diocese of Paterson,* 2021 U.S. Dist. LEXIS 111062; *Coyle v. Salesian of Don Bosco,* 2021 N.J. Super. Unpub. LEXIS 1635 (July 21, 2021).

These concerns are not present where the alleged victim is an adult as Plaintiff was at the time of the alleged incident. Because the New Jersey legislature did not make any findings about why the reviver amendment is curative with respect to adult victims, and because principles of equity weigh against a blanket rule that opens the floodgates to all claims, the United States and New Jersey constitutions prohibit retroactive divestment of a statute of limitations defense where the complainant is an adult. While tolling should be equitably applied to a plaintiff who was not aware of his/her injury until after the statute of limitations had run, there is no rationale for applying tolling to an adult victim who *was* aware of her injury at the time or shortly after the incident. In reviving cases of child sexual abuse, the New Jersey legislature cited specifically to the unique effects of abuse on child victims. No equivalent discussion or findings were made to justify reviving tort claims by an adult plaintiff from 30 years ago, and principles of equity and fairness require the court to take seriously the rights of defendants who must suddenly defend against stale accusations when they previously had an absolute defense to claims from that time period.

In holding that their State constitutions protect against retroactive divestment of a statute of limitations defense, courts have, rightly, distinguished

themselves from federal constitutional precedent which has held that statutes of limitations are "arbitrary enactments" not "vested rights". *See Campbell v. Holt,* 115 U.S 629 (1885). That said, Defendant urges this Court to strongly consider Justice Bradley's dissent in *Campbell* when determining whether the federal Due Process clause protects Defendant from having to defend against Plaintiff's ancient claims that were time-barred decades ago but for this reviver amendment. Citing Chief Justice Marshall, Justice Bradley observed that "[t]he statute of limitations was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence may be lost." *Campbell,* 115 U.S. at 632. *See also* Nathan S. Chapman & Michael W. McConnell*, Due Process as Separation of Powers*, 121 Yale L.J. 1672., 1781-82 (2012) (arguing that at the time of framing of the U.S. Constitution, statutes retroactively depriving people of rights and property were seen as unconstitutional interference with judicial functions). Because the reviver amendment purports to revive all claims, no matter how ancient, even after the statute of limitations has run, it deprives Defendant of a vested right under the Due Process clauses of the U.S. and New Jersey Constitutions and should be overturned.

**IV.    The Reviver Amendment Violates The Ex Post Facto Clause Where It Retroactively Extends The Statute Of Limitations And Ties Liability To Criminal Conduct.**

The Ex Post Facto clauses prohibit both Congress and the states from passing laws that apply retroactively. U.S. Const. art. 1, § 9, cl. 3; U.S. Const. art 1, § 10, cl. 1.  The New Jersey Constitution also prohibits *ex post facto* laws and is construed in lockstep with its federal counterpart. *See* N.J. Const. Art. IV § 7 ¶3; *State v. Hester*, 233 N.J 381 at 392 (N.J. 2018). The United States Constitution makes no distinction between laws on the basis of whether they are civil or criminal in form, and strong arguments exist supporting the view that the Framers intended to prohibit all retroactive laws. While the general rule under current United States jurisprudence is that only laws that impose criminal punishment violate the Ex Post Facto clause. *Calder v. Bull*, 3 U.S. 386, 390-1 (1798), even laws that are not explicitly criminal are violative of *ex post facto* if they intend to punish or if their effects are suitably punitive. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69 (1963). The reviver statute violates the United States and New Jersey Ex Post Facto clauses because: (1) a historical interpretation of the Ex Post Facto clause shows it applies to civil laws like the reviver amendment, and (2) it is punitive in both intent and effect.

> **A.    The Ex Post Facto Rule Was Intended To Apply To Both Civil And Criminal Laws.**

The Supreme Court first interpreted the *ex post facto* rule in *Calder v. Bull*, *supra,* holding that it applies only to criminal laws. As discussed below, the time

has come for the Supreme Court to revisit *Calder,* which was wrongly decided. Because of the unique nature of New Jersey's reviver amendment, which ties liability to a finding of criminal conduct by a civil court and reopens long-expired statutes of limitations, the reviver amendment is just the kind of civil law that the historical arguments applying *ex post facto* to the civil context have in mind.

Whether the *ex post facto* rule, as expressed in Article One §§ 9 & 10 applies to civil laws has been debated since before the Constitution was ratified. Evan C. Zoldan, *The Civil Ex Post Facto Clause*, 2015 Wis. L. Rev. 727, 733-750 (2015). Both sides of the argument make originalist arguments. In doing so, both sides rely on the same types of evidence: (1) British primary sources; (2) the Constitutional Convention; (3) state ratifying conventions; (4) public debate; and (5) post-ratification evidence. *Id.* at 736-749. For example, the side in favor of the narrow interpretation in *Calder* will quote John Dickinson, who informed the Convention that, according to Blackstone, "*ex post facto* related to criminal cases only; that they would not consequently restrain the States from retrospective laws in civil cases…." *Id.* at 738 (*quoting* Records of the Federal Convention of 1787, volume 2, page 418-419). Whereas the side supporting the broader interpretation might quote James Madison's response to concerns that the states could retroactively interfere with contracts: "prohibition of ex post facto laws… will oblige the Judges to declare such interferences null & void." *Id.* at 475 (quoting Records of the Federal Convention of 1787, volume 2, page 440). The same back and forth exists for all the categories of historical evidence listed above. *Id.* at 731.

One scholar who recently and comprehensively examined this historical evidence has published findings which should put an end to the debate: at the time the Constitution was framed, the term *ex post facto* was used by legal professionals to refer to all retroactive laws—including civil ones. *Id.* at 732. In his analysis, Zoldan examines several cases where the *ex post facto* rule was applied in civil cases in the era surrounding the Constitution's drafting. These cases involved disputes relating to debt, slave liberation, and property. *Id.* at 757-767. In all these cases, the courts applied the *ex post facto* rule to settle these civil disputes. The use of *ex post facto* in these cases undermines the Court's holding in *Calder* and points to the conclusion that the *Calder* is based on a faulty historical premise and should be overturned.

If *Calder* is wrong and the *ex post facto* rule applies to civil laws as well, then it necessarily applies to laws that retroactively change the statute of limitations. *See Stogner v. California*, 539 US 607 (2003). The U.S. Supreme Court has held that statutes retroactively reviving the statute of limitations in sex abuse cases in the criminal context violate *ex post facto* under at least two principles of *Calder*. First, such a statute "aggravates a crime, or makes it greater than it was when committed" because after the statute of limitations had expired, a party was not "liable to any punishment," therefore the retroactive law aggravated the crime. *Stogner*, 539 U.S. at 603. Second, the laws retroactively changing the statute of limitations violate the *Calder* principle that a law violates *ex post facto* if it diminishes "the quantum of evidence required to convict."  *Id.* at 613 *citing Calder,*

25

3 U.S at 390-1. A law that changes the statute of limitations changes the quantum of evidence required because a statute of limitations "reflects a legislative judgment that, after a certain time, no quantum of evidence" will be sufficient to convict. *Stogner, supra citing United States v. Marion*, 404 U.S. 307 at 322 (1971).

Further, the historical justifications for the *ex post facto* rule apply with equal force in the civil and criminal contexts. Two primary justifications exist for the *ex post facto* rule. First, the rule exists to promote stability and ensure citizens have fair notice of the laws. Jane Harris Aiken, *Ex Post Facto in the Civil Context: Unbridled Punishment*, 81 Ky. L.J. 323, 329-30 (1993). Prior to the Constitution's framing, the colonists suffered from *ex post facto* laws enacted by the British and—after the Revolution—the colonists themselves. *Id.* at 327-28. These *ex post facto* laws took civil and criminal forms. Awareness of the instability and unfairness of these laws prompted the framers to include the Ex Post Facto Clauses in the Constitution. Second, the *ex post facto* rule exists to prevent vindictive legislation. *Id.* at 330. Aware that retroactive laws could be used to target specific individuals and groups, the framers included the Ex Post Facto Clauses to prevent these potential abuses of power. *Id.*

These two justifications—notice and preventing legislative vindictiveness— apply to the civil context with the same force they apply to the criminal context, as demonstrated by the allegations at bar. Retroactively changing laws, as the New Jersey legislature did with the reviver amendment, necessarily deprives people of fair notice and of the ability to preserve and obtain evidence. This is of particular

26

concern where the reviver amendment applies to adults who claim to have been victimized (as opposed to people who were minors), where a defendant may seek to prove the encounter was consensual through common sources of evidence like witness testimony or personal correspondence. The same problem applies to disproving the allegations through alibi evidence or disputing when or where something could or could not have occurred. Forcing a person to defend against an allegation of something that allegedly happened 30 years earlier (or more), for which the statute of limitations had been long settled, creates a clear and unjust disadvantage that goes right to the heart of the fair notice justification for the Ex Post Facto clause. After a statute of limitations is passed most evidence will be lost or forgotten by a person not suspecting they will have to defend themselves. The more time passes, the more that person is disadvantaged and the more egregious the violation of the *ex post facto* clause becomes. While civil defendants may not face incarceration, they may nonetheless be forced to pay substantial damages and have their names sullied in an action they cannot properly defend against.

The protection against legislative vindictiveness is just as vital, since many laws that have been named civil have real and devastating consequences in practice. The protection against vindictiveness applies no less to Defendant, who as a public figure, has been a target of much attention in popular culture because of these allegations. Attention to Defendant and other public figures, and the cultural climate influenced by the #MeToo movement very much have the power to influence legislation, and it is within reason to suggest that in some cases legislators may

27

have had specific people in mind, including Defendant, when drafting and voting for these laws. The Ex Post Facto clause was intended to prohibit legislators from passing laws that unfairly change the rules retroactively in just these types of cases.

Given the strong historical arguments and legal justifications in favor of applying the Ex Post Facto clause to civil cases that operate retroactively, this Court should find that the reviver amendment violates the *ex post facto* rule on the basis of its retroactivity alone and dismiss Plaintiff's complaint. But the punitive nature of New Jersey's reviver amendment allows this Court to find it violates *ex post facto* principles even without contradicting *Calder*.

### B.   The Reviver Amendment Violates The Ex Post Facto Clause Because It Is Punitive In Nature.

A law violates the *ex post facto* rule if it either imposes punishment for an act that was lawful when committed or retroactively imposes a greater punishment on unlawful conduct. *Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952). In addition, a law can violate the Ex Post Facto clause if it alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender. *Calder*, 3 U.S. at 390.

If the legislature did not intend the law to punish, it may still violate the *ex post facto* rule if its effects are suitably punitive. *See, Smith v. Doe*, 538 U.S. 84, 97 (2003); *Mendoza-Martinez* at 168-9. The *Mendoza-Martinez* Court identified seven factors as useful—not dispositive—guideposts to determine whether a law's effects are punitive enough to subject it to the *ex post facto* rule. *Smith*, 538 U.S. at 97.

28

Those factors are: (1) whether the behavior the law applies to is already a crime; (2) whether the sanction requires a finding of intent; (3) whether its operation will promote retribution and deterrence; (4) whether there is an alternative purpose to the law; (5) whether, if there is an alternative purpose, it is excessive in regard to that purpose; (6) whether the sanction involves an affirmative disability or restraint; and (7)  whether it has historically been regarded as punishment. *Id*.

The reviver amendment violates the Ex Post Facto clauses of the United States and New Jersey constitutions under two related but alternative theories. First, if courts interpret the amendments to only apply to people who were convicted of crimes, it serves to inflict greater punishment and change the punishment for crimes from what they were when committed. The fact that the amendment may authorize civil action is not dispositive where the *Mendoza-Martinez* factors, discussed below, weigh in favor of punitive intent and effects. Alternatively, the reviver amendment violates *ex post facto* if the court finds that a criminal conviction is not a prerequisite to liability, especially where it requires the Court to find that the injuries resulted from the commission of a crime for liability to attach. Such a ruling would violate the *Calder* principle that a law violates *ex post facto* if it "alters the legal rules of evidence, and receives less, or different testimony that the law required at the time of the commission of the offense, in order to convict the offender." *Calder* at 390-1. Under the plain language of the reviver amendment, in order to find that Plaintiff's injuries resulted from the commission of a crime, it must hold that Defendant committed a crime. To authorize a civil court to make

29

such a finding changes the law from what it at the time the crime was committed, and certainly what it was after the statute of limitations had expired. It operates to the extreme detriment of a defendant and changes the standard and burden of proof, as well as countless removing other protections of the criminal process. Under *Calder*, either of these interpretations lead to the conclusion that the reviver amendment is an unconstitutional *ex post facto* law.

Applying the *Mendoza-Martinez* factors to the reviver amendment also leads to the conclusion that the reviver amendment violates *ex post facto* principles. To start, the reviver amendment applies only to criminal conduct, all of which requires scienter, and the purpose of the law is to promote retribution and deterrence. That it applies only to criminal conduct is apparent from language, which authorizes a cause of action for injuries "resulting from the commission of sexual assault, [or] any other crime of a sexual nature." § 2A:14-2b. Moreover, the crimes of sexual assault requires intent, which in turn requires scienter. See § 2C:14-2. By tying the liability to criminal conduct, the legislature made clear that it intended to promote the aims of retribution and punishment.

More importantly, the CSAA authorizes punitive damages. § 2A:61B-1(h). The Supreme Court has recognized that "the very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions," and that "retroactive imposition of punitive damages would raise a serious constitutional question" under the Ex Post Facto clause. *Landgraf v. Usi Film Prods.*, 511 U.S. 244 at 281 (1994).

30

Punitive damages are intended to punish and deter. *See Id. quoting Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S. Ct. 2882 (1976) (holding that court would "hesitate to app rove the retrospective imposition of liability on any theory of deterrence . . . or blameworthiness"); *DeVeau v. Braisted,* 363 U.S. 144, 160 (1960) ("The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts"). *See also, Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F. 2d 966, 972 (2d Cir. 1985) (retroactive application of punitive treble damages provisions "would present a potential *ex post facto* problem"). Given that the reviver amendment authorizes punitive damages and is tied to criminal conduct, the Court should infer that the legislature's purpose is punitive and that the reviver amendment is an unconstitutional *ex post facto* law.

Admittedly, the reviver amendment does not impose an affirmative disability or restraint on Defendant, insofar as it does not physically restrain him or cause him occupational or housing disadvantages. Nonetheless, every other relevant *Mendoza-Martinez* factor weighs toward finding the amendment to be punitive. Consequently, this Court should find that it is an unconstitutional *ex post facto* rule.

## **<u>CONCLUSION</u>**

Defendant William Cosby respectfully requests that this Court enter an order dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

<u>/s/ JENNIFER BONJEAN</u>
Bonjean Law Group, PLLC
750 Lexington Avenue, 9th Floor
New York, New York, 10022
Tel: (718) 875-1850
Email: jennifer@bonjeanlaw.com

CC: All counsel via ECF