**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

LILI BERNARD                    1:21-cv-18566-NLH-MJS

           Plaintiff,        OPINION

    v.

WILLIAM COSBY
          Defendant.

---

Appearances:

JORDAN KOEL MERSON
JORDAN K. RUTSKY
MERSON LAW, PLLC
950 THIRD AVENUE
18TH FLOOR
NEW YORK, N.Y. 10022

    *On behalf of Plaintiff*

JENNIFER ANN BONJEAN
ASHLEY BLAIR COHEN
BONJEAN LAW GROUP, PLLC
750 LEXINGTON AVENUE
9TH FLOOR
NEW YORK, N.Y. 10022

    *On behalf of Defendant*

HILLARY MARA NAPPI
HACH ROSE SCHIRRIPA & CHEVERIE LLP
112 MADISON AVENUE
10TH FLOOR
NEW YORK, N.Y. 10016

    *On behalf of Amicus Curiae*

**HILLMAN**, District Judge

Pending before the Court is Defendant William Cosby's ("Defendant") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF 10).  For the reasons expressed below, Defendant's motion will be denied.

## I.   Background

For the purposes of the instant motion, the Court will treat as true all facts alleged in the Complaint and draw all reasonable inferences in favor of Plaintiff Lili Bernard ("Plaintiff").  See Jones v. Pi Kappa Alpha Int'l Fraternity, 431 F. Supp. 3d 518, 522 (D.N.J. Dec. 18, 2019).

Plaintiff, a citizen of California, (ECF 1 at ¶¶ 1, 6), met Defendant, a citizen of Pennsylvania, (id. at ¶¶ 2, 7), on the set of Defendant's television program, The Cosby Show, (id. at ¶ 9).  In July of 1990, Defendant offered to mentor Plaintiff in acting and for several weeks thereafter led her through theatrical exercises, asked her detailed personal questions, and promised that if she worked hard and followed his direction, he'd feature her in a principal speaking role on The Cosby Show. (Id. at ¶¶ 10-11).  During one such mentoring session involving vocal projection, Defendant grabbed Plaintiff by the ribs without permission and then fondled her breasts.  (Id. at ¶ 13).

In August of 1990, Defendant convinced Plaintiff to travel from New York to Trump Taj Mahal in Atlantic City, New Jersey

for a meeting with Defendant and an entertainment producer and arranged for her transportation.  (Id. ¶¶ 15-16).  The meeting continued from a Taj Mahal dining room to a suite and Defendant prepared what was represented as a non-alcoholic beverage for Plaintiff.  (Id. at ¶¶ 19-20).  After drinking the beverage, Plaintiff immediately felt dizzy, weak, and nauseous and later vomited and lost consciousness.  (Id. at ¶¶ 21-22).

Plaintiff woke to Defendant undressing her despite her protest before falling back out of consciousness.  (Id. at ¶¶ 23-24).  When Plaintiff next regained temporary consciousness, Defendant was naked and on top of her, penetrating her vaginally with his penis.  (Id. at ¶ 25).  Plaintiff woke again in an empty bathtub or jacuzzi still unable to move and, next, the following morning naked and in bed.  (Id. at ¶¶ 26-27).  After Plaintiff woke, Defendant sat her up, dressed her, handed her money, and walked her to a waiting car that drove her back to New York.  (Id. at ¶¶ 28-29).

Following the sexual assault in Atlantic City, Defendant threatened that he would file a police report against her, sue her for defamation, prevent her from working in the entertainment industry, and "erase" her if she reported the incident.  (Id. at ¶¶ 31-33).  Defendant drugged and assaulted Plaintiff on additional unspecified occasions.  (Id. at ¶ 30).

Plaintiff filed the instant Complaint on October 24, 2021

3

pursuant to New Jersey's statutory extension of the statute of limitations for injuries resulting from sexual offenses, (id. at ¶ 8), which provided a two-year window following its enactment to bring otherwise time-barred actions in tort resulting from the commission of a sexual assault, "any other crime of a sexual nature," or statutorily defined sexual acts or sexual abuse. N.J.S.A. 2A:14-2b(a).  The Complaint contains five counts, four intentional torts – assault, (ECF 1 at ¶¶ 38-42), battery, (id. at ¶¶ 44-47), intentional infliction of emotional distress ("IIED"), (id. at ¶¶ 49-55), and false imprisonment, (id. at ¶¶ 57-61) – as well as a separate count for punitive damages, (id. at ¶¶ 63-67).[1]

Defendant moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF 10).  Plaintiff filed an opposition, (ECF 12), and Defendant replied, (ECF 13).  CHILD USA, a "non-profit national think tank working to end child abuse and neglect in the United States," (ECF 11-1 at ¶ 2), moved for leave to file an amicus brief, (ECF 11).  In an August 11, 2022 Opinion and Order, the Court granted CHILD USA's

---

[1] The Complaint contains five counts, four intentional torts and one demand for punitive damages.  While, as discussed below, Plaintiff may pursue punitive damages, damages themselves are a remedy rather than a cause of action and "an independent count for punitive damages is not cognizable."  See Bond v. Solvay Specialty Polymers, USA, LLC, 583 F. Supp. 3d 643, 654 (D.N.J. Feb. 2, 2022).

motion.  (ECF 14; ECF 15).  CHILD USA filed a brief opposing Defendant's motion to dismiss that same day.  (ECF 16).

## II. Discussion

### A. Jurisdiction

The Court has jurisdiction over this matter as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).

### B. Motion to Dismiss

Pursuant to the Federal Rules of Civil Procedure, a party may assert by motion a failure to state a claim upon which relief can be granted.  See Fed R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Doe v. Princeton Univ., 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and – accepting the plaintiff's factual assertions, but not legal conclusions, as true – "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" id. at 342 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The sufficiency of a complaint is determined by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking

at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

## C. Interpretation and Constitutionality

Central to Defendant's motion to dismiss is the application, and overall constitutionality, of New Jersey's statute providing a two-year revival window for otherwise time-barred claims arising out of sexual offenses. The statute, in relevant part, provides:

> Notwithstanding the statute of limitations provisions of N.J.S.2A:14-2, section 2 of P.L.2019, c. 120 (C.2A:14-2a), section 1 of P.L.1964, c. 214 (C.2A:14-2.1), or any other statute, an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c. 120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

N.J.S.A. 2A:14-2b(a).

Federal courts sitting in diversity "are required to apply the substantive law of the state whose law governs the action." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)); see also Schmigel v. Uchal, 800 F.3d 113, 119 (3d Cir. 2015)

("Pursuant to the <u>Erie</u> doctrine, '[a] federal court sitting in diversity must apply state substantive law and federal procedural law.'" (alteration in original) (quoting <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000))).[2]

Where, as here, a court is tasked with interpreting a

---

[2] Federal courts exercising diversity jurisdiction apply the choice-of-law analysis of the forum state to determine which state's substantive laws should apply.  <u>See</u> <u>Mills v. Ethicon, Inc.</u>, 406 F. Supp. 3d 363, 373 (D.N.J. Aug. 27, 2019) (citing <u>Warriner v. Stanton</u>, 475 F.3d 497, 499-500 (3d Cir. 2007)).  New Jersey employs a two-step analysis in which courts first determine whether an actual conflict between the various state laws exist.  <u>Id.</u> (citing <u>P.V. ex rel. T.V. v. Camp Jaycee</u>, 962 A.2d 453 (N.J. 2008)).  If there is no conflict, the law of the forum state applies, however, if a conflict does exist courts proceed to the second step to "determine 'which state has the "most significant relationship" to the claim at issue by weighing the factors' in the applicable section of the Restatement (Second) of Conflict of Laws."  <u>Id.</u> (quoting <u>Agostino v. Quest Diagnostics Inc.</u>, 256 F.R.D. 437, 461 (D.N.J. Feb. 11, 2009)).  Because the parties here do not address which state's tort laws should apply in this action, instead focusing on New Jersey's revival statute, the Court will not weigh the similarities and differences between New Jersey, Pennsylvania, and California tort law here.  <u>See</u> <u>Stewart v. Beam Glob. Spirits & Wine, Inc.</u>, 877 F. Supp. 2d 192, 196 (D.N.J. June 29, 2012) (declining to conduct a choice-of-law analysis without full briefing and applying New Jersey law limited to the claims of named plaintiffs and absent class members whose claims would be governed by New Jersey law).  The Court is satisfied that, even assuming that a conflict exists due to the revived statute of limitations available under New Jersey law, <u>see</u> <u>Rigollet v. Kassoff</u>, 570 F. Supp. 3d 246, 249 (D.N.J. Nov. 4, 2021) (recognizing an actual conflict between New Jersey and Florida laws due to their different statutes of limitations for legal malpractice claims), that Section 145 of the Restatement (Second) of Conflict of Laws pertaining to torts would favor New Jersey law as it is the state in which both the injury and conduct that caused the injury occurred, <u>see</u> Restatement (Second) of Conflict of Laws §§ 145(2)(a),(b) (1971); <u>see also</u> <u>P.V.</u>, 962 A.2d at 461-63 (applying Section 145).

statutory provision not previously interpreted by a state's high court, the objective "is to predict how the [New Jersey] Supreme Court would rule on this question of New Jersey law."  See Roma v. United States, 344 F.3d 352, 361 (3d Cir. 2003) (citing U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996)).  In so doing, the plain language of the statute may provide "persuasive indication" as to how a state high court would rule, see id. at 362, along with state intermediate appellate decisions, federal courts interpreting the state's law, analogous decisions, and other persuasive material, see Spence, 623 F.3d at 216-17; Fink v. Ritner, 318 F. Supp. 2d 225, 228 (D.N.J. May 24, 2004) ("A court will consider the New Jersey legislature's purpose for enacting such a statute, as well as how the New Jersey courts have interpreted and applied the statute.").

## III. Analysis

### A. Defendant's Interpretive Challenges to N.J.S.A. 2A:14-2b

The Court will first consider Defendant's arguments pertaining to interpretation of N.J.S.A. 2A:14-2b.  Defendant's submissions seek to whittle down Plaintiff's potential causes of action until there is nothing left for her to open the two-year revival window of N.J.S.A. 2A:14-2b.  First, Defendant asserts that, because Plaintiff was twenty-six years old at the time of the alleged assault in Atlantic City, she cannot be granted

8

relief for a "prohibited sexual act" or "sexual abuse," as referenced in the revival statute, (ECF 10-2 at 8-10; ECF 13 at 2); see also N.J.S.A. 2A:14-2b(a), because both require the alleged victim to be under the age of eighteen, see N.J.S.A. 2A:30B-2 (listing prohibited sexual acts and defining "Child" as "any person under 18 years of age"); N.J.S.A. 2A:61B-1(a)(1) (defining "sexual abuse" as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult").

Relatedly, Defendant, relying on the New Jersey Supreme Court's decision in Hardwicke v. American Boychoir School, 902 A.2d 900 (N.J. 2006), asserts that Plaintiff's common-law tort claims cannot be revived without a statutory cause of action not presented here, (ECF 10-2 at 13-15). With the specifically cited triggers for revival unavailable, Defendant claims that Plaintiff cannot state a cause of action for an injury resulting from the commission of a sexual assault or "other crime of a sexual nature" because she has not pled that Defendant was convicted of a crime. (ECF 10-2 at 9-12).

The Court is unpersuaded. The Court first holds that Plaintiff need not plead that Defendant has been convicted of sexual assault or other sexual offense. Defendant's position is based, in part, on the fact that "sexual assault" is defined in the New Jersey Code of Criminal Justice and that the Code

9

equates guilt with commission.  (Id. at 11 (citing N.J.S.A. 2C:14-2(a)); see also N.J.S.A. 2C:14-2(a) ("An actor is guilty of aggravated sexual assault if the actor commits an act of sexual penetration with another person . . . .").  Defendant also notes that Plaintiff pursued criminal charges against Defendant and the Atlantic City Prosecutor declined to prosecute.  (ECF 10-2 at 10 n.6).

The revival statute unambiguously provides the two-year revival window for "an action at law for an injury resulting from the commission of" a sexual assault or other crime of a sexual nature.  N.J.S.A. 2A:14-2b(a) (emphasis added). Therefore, the Court finds that the plain, unambiguous language of the statute supports the interpretation that the revival window is triggered by the commission of, rather than conviction for, a sexual assault or other sexual offense.  See Rosano v. Twp. of Teaneck, 754 F.3d 177, 186 (3d Cir. 2014) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute." (quoting Jimenez v. Quarterman, 555 U.S. 113, 118 (2009))).

Had the New Jersey Legislature intended to require conviction, rather than commission, to trigger the revival window, the Court finds that it surely would have done so in plain and simple language.  Instead, it chose the broader term – "commission" – over the narrower one – "conviction."  In the

10

absence of some ambiguity – and there is none – we assume the
Legislature intended the meaning of the words it used.  The fact
that the Legislature utilized the word "commit" in the state
criminal code to define a criminal act does not usurp the use of
that common and ordinary word in the other legal contexts, such
as here common law tort, nor does it require the Court to
ascribe more meaning to it than that context would otherwise
require.

Moreover, Defendant's conflation of commission and
conviction further ignores the differences between criminal and
civil matters – including different objectives, evidentiary
burdens, and penalties.  See Johnson v. Elk Lake Sch. Dist., 283
F.3d 138, 147 (3d Cir. 2002) (noting that evidence of non-arrest
is generally inadmissible at related civil trials because of
"the fact that criminal and civil trials require different
burdens of proof for proving guilt and liability,
respectively").  State and federal courts in New Jersey have
consistently drawn a distinction between civil and criminal
liability.  See, e.g., Sec. and Exch. Comm'n v. Hatch, 128
F.R.D. 58, 63 (D.N.J. Sept. 25, 1989) (declining to vacate a
consent injunction on the basis that related criminal charges
were dismissed, concluding that "criminal action dismissals are
of no relevance to a determination of civil liability");
Velazquez v. City of Camden, 146 A.3d 681, 687-89 (N.J. Super.

11

Ct. App. Div. 2016) (holding that testimony that defendant police officer was not to be prosecuted was violative of the New Jersey Rules of Evidence); see also cf. State v. Damiano, 730 A.2d 376, 384 (N.J. Super. Ct. App. Div. 1999) ("Obviously, criminal liability cannot attach simply because civil liability attaches.").

Further, as recognized by the Third Circuit in Johnson, a decision not to pursue criminal charges may be influenced not only by more stringent evidentiary burdens, but other factors such as allocation of resources. See 283 F.3d at 147; see also Velazquez, 146 A.3d at 688-89 (discussing Johnson). The New Jersey Legislature is presumed to be aware of such decisions. See Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 74 A.3d 860, 872 (N.J. 2013).

Although, given the lack of ambiguity in the statutory language, the Court need not undertake the oft-times perilous task of reviewing legislative history, this interpretation is further supported by statements by members of the New Jersey Legislature emphasizing the time sometimes necessary for victims of sexual offenses to come forward. See Governor Murphy Signs Legislation Extending the Civil Statute of Limitations for Sexual Abuse Claims in New Jersey, Governor Phil Murphy (May 13, 2019), https://www.nj.gov/governor/news/news/562019/approved/ 20190513c.shtml ("Because those who have been sexually abused

often suppress their memories for years or don't connect their injuries to their abuse, they need much more time to file a civil action.  This new law gives them that time." (quoting Assemblymember Annette Quijano)).  If intended beneficiaries of the revival statute are unable to come forward until after many years later to pursue civil actions, logic dictates that these individuals also did not pursue criminal charges following the offenses.

As the plain language of the revival statute, existing distinctions between criminal and civil law, and legislative intent all point toward a finding that civil liability within the revival window is not premised on conviction, the Court holds that Defendant's argument must fail.  While, as will be discussed infra, Plaintiff must sufficiently demonstrate that a sexual assault or other sexual offense occurred, such a showing need not take place at this juncture, satisfy criminal evidentiary burdens, or be supported by a prior conviction.

Because the Court concludes that plaintiffs may access the revival window by alleging commission of sexual assault or other sexual offense, Defendant's argument contending that Plaintiff must tether her intentional tort claims to a statutory cause of action must fail.  Defendant's argument is based on a reading of Hardwicke, which noted that the plaintiff's common-law claims were based on sexual abuse as defined by the Child Sexual Abuse

Act ("CSAA") and the New Jersey Supreme Court's caution against reading the opinion as permitting application of the CSAA's tolling provisions for conduct not within the statutory definition of sexual abuse.  (ECF 10-2 at 14-15); see also Hardwicke, 902 A.2d at 919, 919 n.12.  Though Defendant concedes that the CSAA has since been amended, he emphasizes that the New Jersey Legislature cited Hardwicke in so doing and that "based on sexual abuse" language remains.  (ECF 10-2 at 15).

However, Defendant fails to acknowledge that the same bill referenced in his brief that amended the CSAA amended or otherwise changed multiple statutes and created the revival window expressly applicable to "Child and Adult Victims."  See N.J. S. Judiciary Comm. Statement to S. Comm. For S. No. 477, § 9 (Mar. 7, 2019).  The Court holds that this statement provides evidence of legislative intent for the revival statute to apply to adults and, logically, not be limited by the language of the CSAA.  As Defendant appears to understand, "[a]s written, the reviver statute requires a claim to be tethered to a statutory cause of action either 'based on sexual abuse' or 'resulting from' the commission of a crime."  (ECF 10-2 at 15).

The Court is not alone in finding that causes of action defined within the CSAA are not required to trigger the revival window.  In S.Y. v. Roman Catholic Diocese of Paterson, the plaintiff alleged in his complaint that the assault and abuse he

14

suffered "constitute[d] crimes of a sexual nature."  No. 20-2605, 2021 WL 4473153, at *1 (D.N.J. Sept. 30, 2021).  The court, in denying the defendant's motion to dismiss, concluded that the plaintiff could sustain his negligence claims based on specific accusations in the complaint, including prior abuse and an alleged policy aimed to prevent a scandal within the clergy. Id. at *9.  Though S.Y. is distinguishable from the instant matter in that the plaintiff was a minor at the time of the alleged assaults and the action was brought against the diocese as opposed to the alleged abuser, the Court finds that the plaintiff's use of the revival statute's "crimes of a sexual nature" language and lack of a cited conviction supporting the analysis adds further support to the Court's conclusion.  The Court therefore rejects Defendant's interpretative challenges to the revival statute.

**B. Defendant's Vagueness Argument**

Defendant next contends that if the revival statute does not require a plaintiff to be a minor or demonstrate that the defendant was convicted of a sexual offense, the statute must be void for vagueness.  The Court disagrees.

"The 'void for vagueness' doctrine arises under the due process clause of the Fourteenth Amendment, and is designed to give 'fair warning' of prohibited conduct." Scavone v. Pa. State Police, 501 Fed. Appx. 179, 181 (3d Cir. 2012) (quoting

San Filippo v. Bongiovanni, 961 F.2d 1125, 1135 (3d Cir. 1992)).
The vagueness doctrine aims to ensure the nondiscriminatory
application of laws.  See Waterman v. Farmer, 183 F.3d 208, 212
n.4 (3d Cir. 1999) (citing Kreimer v. Bureau of Police for the
Town of Morristown, 958 F.2d 1242, 1266 (3d Cir. 1992)).
Therefore, a "statute is unconstitutionally vague under the Due
Process Clause if it '(1) "fails to provide people of ordinary
intelligence a reasonable opportunity to understand what conduct
it prohibits"; or (2) "authorizes or even encourages arbitrary
and discriminatory enforcement."'"   United States v. Fontaine,
697 F.3d 221, 226 (3d Cir. 2012) (quoting United States v.
Stevens, 533 F.3d 218, 249 (3d Cir. 2008)); see also F. for
Acad. and Institutional Rts., Inc. v. Rumsfeld, 291 F. Supp. 2d
269, 317 (D.N.J. Nov. 5, 2003) (providing the same two
standards).

The vagueness doctrine applies to both criminal and civil
matters.  Mateo v. Att'y Gen., 870 F.3d 228, 232 (3d Cir. 2017).
Lesser degrees of specificity are required in civil matters as
compared to criminal due to the less severe potential penalties
implicated, id. (citing San Filippo, 961 F.2d at 1135), and
"[w]hether a law 'threatens to inhibit the exercise of
constitutionally protected rights' is critical in determining
the level of clarity demanded by the Constitution," Rumsfeld,
291 F. Supp. 2d at 317 (quoting Vill. of Hoffman Ests. v.

Flipside, Hoffman Ests., Inc., 455 U.S. 489, 499 (1982)).

Though a vagueness challenge may attack a law on its face or as applied, the conduct of the party challenging the law is of critical importance.  See Amaya v. New Jersey, 766 F. Supp. 2d 533, 539 (D.N.J. Feb. 10, 2011); see also Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 167 (3d Cir. 2008) ("The [vagueness doctrine] inquiry is completed on a case-by-case basis, and the party opposing the statute or standard must show that it is vague as applied to him." (citing San Filippo, 961 F.2d at 1136)).  A party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Amaya, 766 F. Supp. 2d at 539 (quoting Vill. of Hoffman Ests., 455 U.S. at 495).

Here, Defendant concedes that – had he been convicted of sexual assault – the revival statute would apply to Plaintiff's tort claims.  However, "the amendment as applied to any other set of facts is vague, and the remainder of its language is vague on its face."  (ECF 10-2 at 16-17).  This is because, while "sexual assault" is defined in the New Jersey Code of Criminal Justice, it is not defined in the statute, and courts may similarly be forced to interpret what other crimes of a sexual nature might be.  (Id. at 17-18).  However, as noted by Plaintiff, (ECF 12-19 at 14), Chapter 14 of the New Jersey Code of Criminal Justice lists a finite number of recognized sexual

offenses and related definitions.  These include sexual assault, the definition of which includes "an act of sexual penetration with another person" when "[t]he actor commits the act using coercion or without the victim's affirmative and freely-given permission."  N.J.S.A. 2C:14-2(c)(1).

Therefore, the Court concludes that the New Jersey Code of Criminal Justice provides sufficient clarity as to what constitutes "sexual assault" and "any other crime of a sexual nature" in the revival statute.  For the reasons described above, the Court finds that, while civil plaintiffs must demonstrate that a sexual offense was committed, that showing need not include a criminal conviction or criminal evidentiary standards.  Because N.J.S.A. 2C:14-2 clearly defines proscribed "sexual assault" conduct, the Court holds that the revival statute is not vague as to Defendant and therefore analysis as to the statute's application in other contexts need not be considered.  See Amaya, 766 F. Supp. 2d at 539.

**C. Defendant's Vested Right in the Statute of Limitations**

Defendant next contends that the revival statute violates Due Process under both the United States and New Jersey Constitutions because it retroactively deprives Defendant of a vested right – an absolute defense under the statute of limitations – and should thus be struck down.  (ECF 10-2 at 19-22).  The Court joins other decisions within the District and

rejects Defendant's contention that the revival statute deprived him of a vested right in the statute of limitations.

The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law.  U.S. Const. amend. XIV, § 1.  The New Jersey Constitution, relatedly, states that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."  N.J. Const. art. I, ¶ 1.

The language of Article I, Paragraph 1 of the New Jersey Constitution has been found to "embrace the fundamental guarantee of due process," see Jamgochian v. N.J. State Parole Bd., 952 A.2d 1060, 1070 (N.J. 2008), and the New Jersey Constitution "affords greater protection for individual rights than its federal counterpart," State v. Melvin, 258 A.3d 1075, 1091 (N.J. 2021).  "Retroactive legislation that impairs or destroys a 'vested right' may violate the due process clauses" of the United States or New Jersey Constitutions.  See Twiss v. State Dep't of Treasury, 591 A.2d 913, 917 (N.J. 1991) (citing Panzino v. Cont'l Can Co., 364 A.2d 1043 (N.J. 1976)).

Though Defendant claims that the revival statute is violative of both the United States and New Jersey

Constitutions, the section of his brief largely focuses on the laws of New Jersey and other states.  (ECF 10-2 at 19-22).  New Jersey courts employ a two-part test when determining whether a statute may be applied retroactively: (1) whether the Legislature intended for it to be retroactively applied and (2) "whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice."  See James v. N.J. Mfrs. Ins. Co., 83 A.3d 70, 77 (N.J. 2014) (quoting In re D.C., 679 A.2d 634, 644 (N.J. 1996)).

A finding of manifest injustice generally looks to reliance on existing law and the unfairness of changing that law retroactively.  See D.C., 679 A.2d at 648 (citing Gibbons v. Gibbons, 432 A.2d 80 (N.J. 1981)); see also Nobrega v. Edison Glen Assocs., 772 A.2d 368, 384 (N.J. 2001) ("The manifest injustice analysis requires 'a weighing of the public interest in the retroactive application of the statute against the affected party's reliance on previous law, and the consequences of that reliance.'" (quoting Nelson v. Bd. of Educ. of Twp. of Old Bridge, 689 A.2d 1342, 1349 (N.J. 1997))); Phillips v. Curiale, 608 A.2d 895, 904 (N.J. 1992) ("[W]e must consider in the weighing process the extent to which plaintiff changed his position in reliance on the existing law . . . or had his reasonable expectations defeated.").

Applied to the present matter, the New Jersey Legislature clearly intended for the revival statute to have retroactive effect by expressly referencing otherwise time-barred actions. See N.J.S.A. 2A:14-2b(a).  Moving toward the second prong of the analysis, the Court notes that a "defendant's expectation or hope that the statute of limitations would bar a tort suit against him arising from his criminal conduct is not a constitutionally protected interest," see Short v. Short, 858 A.2d 571, 575 (N.J. Super. Ct. App. Div. 2004) (citing Panzino v. Cont'l Can Co., 364 A.2d 1043 (N.J. 1976)), and though Defendant contends that it would be "manifestly unfair" for him to defend allegations from three decades ago, (ECF 10-2 at 20), he does not show that he changed his position in reliance of then-existing law or that that reliance outweighs the public interest in retroactive application.  In other words, Defendant's alleged actions were as illegal at the time of their commission as they are now.  The only difference is the length of time Plaintiff has been provided to seek recourse.

Courts within the District of New Jersey have arrived at same conclusion with respect to the constitutionality of the revival statute, albeit with focuses limited to the New Jersey Constitution.  See S.Y., 2021 WL 4473153, at *5-8; W.F. v. Roman Cath. Diocese of Paterson, No. 20-7020, 2021 WL 2500616, at *3-4 (D.N.J. June 7, 2021).  These decisions provide persuasive

support that the revival statute's public purpose of correcting
injustices suffered by victims of sexual offenses outweighs any
expectation in an earlier statute of limitations for conduct
that was illegal at the time of commission, see W.F., 2021 WL
2500616, at *4, and that a defendant's expectation in the
continuance of a law cannot alone constitute a vested right or
manifest injustice, see S.Y., 2021 WL 4473153, at *8 (citing
Phillips, 608 A.2d at 903-04 and D.J.L. v. Armour Pharm. Co.,
704 A.2d 104, 115 (N.J. Super. Ct. Law. Div. 1997)).

The Court finds that turning to the United States
Constitution does not produce a different result.  See
Pittsburgh Can Co. v. United States, 113 F.2d 821, 824 (3d Cir.
1940) (discussing Campbell v. Holt, 115 U.S. 620 (1885) and
recognizing that statutes of limitations "confer no vested
rights"); see also Evan H., ex rel. Kosta H. v. Unionville-
Chadds Ford Sch. Dist., No. 07-4990, 2008 WL 4791634, at *4
(E.D. Pa. Nov. 4, 2008) ("[A] party possesses no vested right in
a statute of limitations." (citing Pittsburgh Can Co., 113 F.2d
at 824 and Terry v. Anderson, 95 U.S. 628, 633 (1877))).

Defendant acknowledges decisions contrary to his position,
but "urges this Court to strongly consider Justice Bradley's
dissent in Campbell" and distinguish cases such as W.F. as being
unique to minor victims.  (ECF 10-2 at 20-22).  For reasons
articulated throughout this Opinion, the Court finds that the

22

New Jersey Legislature clearly intended for the revival statute to apply to adults and will not turn to a Nineteenth Century dissent when the more modern and well-reasoned authorities in front of it are clear.  The Court holds that Defendant has failed to demonstrate that the revival statute deprives him of a vested right or constitutes a manifest injustice.

### D. Defendant's Ex Post Facto Challenge

Finally, Defendant asserts that the revival statute violates the Ex Post Facto Clauses of the United States and New Jersey Constitutions.  (ECF 10-2 at 23-31).  The Court disagrees.

The Ex Post Facto Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law . . . ."  U.S. Const. art. I, § 10, cl. 1; Spanier v. Dir. Dauphin Cnty. Prob. Servs., 981 F.3d 213, 221 (3d Cir. 2020).  Similarly, under the New Jersey Constitution, "[t]he Legislature shall not pass any . . . ex post facto law . . . ."  N.J. Const. art. IV, § 7, ¶ 3.  "The New Jersey Ex Post Facto Clause is interpreted in the same manner as its federal counterpart."  Riley v. N.J. State Parole Bd., 98 A.3d 544, 552 (N.J. 2014) (citing Doe v. Poritz, 662 A.2d 367 (N.J. 1995)).

The prohibition against ex post facto statutes has been understood to be limited to laws that are penal in nature.  See, e.g., Collins v. Youngblood, 497 U.S. 37, 41 (1990) ("[I]t has

long been recognized by this Court that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." (citing Calder v. Bull, 3 Dall. 386, 390-392 (1798) (opinion of Chase, J.); id. at 396 (opinion of Paterson, J.); id. at 400 (opinion of Iredell, J.))); Matter of Garay, 444 A.2d 1107, 1110 (N.J. 1982) ("There is no dispute that the constitutional ban against the passage of ex post facto laws applies only to criminal laws.").

Defendant does not dispute the general application of the Ex Post Facto Clauses.  Rather, Defendant – citing scholarly articles – asserts that Calder was wrongly decided in so far as it does not extend the ex post facto prohibition to civil laws. (ECF 10-2 at 23-28).  The revival statute, according to Defendant, either increases the punishment of those who have been convicted of a sexual offense or decreases the burden of proof necessary to find that defendant committed a sexual offense.  (Id. at 29-30).  Finally, Defendant argues that, because the CSAA, which is referenced in the revival statute, permits punitive damages, the revival statute may be deemed punitive.  (Id. at 30-31).

The Court will decline Defendant's invitation to challenge Calder and its more than two centuries of precedent.  For the reasons discussed above, the Court also finds that Defendant

24

conflates civil and criminal proceedings, and that the revival statute does not increase penalties for those convicted of a sexual offense or change evidentiary burdens as applied to those who have not been convicted.

With respect to Defendant's reference to punitive damages, the Court notes that the revival statute itself does not reference punitive or treble damages and that Plaintiff here seeks punitive damages under the common law and Punitive Damages Act. (ECF 1 at ¶¶ 63-67). Such damages, in the Court's view, do not implicate the Ex Post Facto Clauses. See Roman Cath. Bishop of Oakland v. Superior Ct., 28 Cal. Rptr. 3d 355, 362 (Cal. Ct. App. 2005) ("[A] statute reviving the limitations period for a common law tort cause of action, thereby allowing the plaintiff to seek punitive damages, does not implicate the ex post facto doctrine . . . .").[3]

An analysis on the merits does not lead to a different result. To be sure, "it is possible for a civil statute to be criminally punitive in effect." United States ex rel. Int'l Brotherhood of Elec. Workers Loc. Union No. 98 v. Farfield Co., 5 F.4th 315, 336 (3d Cir. 2021). However, so finding requires "clearest proof" based on factors including whether the civil

---

[3] Like the New Jersey Constitution, the ex post facto prohibition within the California Constitution "is analyzed in the same manner as its federal counterpart." See People v. Castellanos, 982 P.2d 211, 213 (Cal. 1999).

sanction: (1) involves affirmative disability or restraint, (2) has historically be considered punishment, (3) requires a finding of scienter, (4) promotes retribution or deterrence, (5) applies to conduct that already constitutes a crime, (6) may serve an alternative purpose, and (7) appears excessive in relation to the alternative purpose. Id. (citing Hudson v. United States, 522 U.S. 93, 99-100 (1997)). Fairfield Co. involved an amendment to the False Claims Act ("FCA") and related treble damages, id. at 324-25, and the Third Circuit ultimately found that – on balance – its retroactive application did not violate the federal Ex Post Facto Clause, id. at 336-38.

Of particular relevance, the Third Circuit concluded that the FCA's treble damages and civil fines did not restrict individuals' physical liberty as imprisonment would and that monetary penalties have "not historically been viewed as punishment." Id. at 336. Further, the Circuit Court found that though the FCA promoted deterrence, "all civil penalties have some deterrent effect," id. at 337 (quoting Hudson, 522 U.S. at 102), and that "the separate existence of a criminal statute suggest[ed] that the civil statute serve[d] a different purpose," id.

Applied here, the Court agrees that potential punitive damages do not restrict Defendant's liberty, that monetary damages are not generally viewed as punishment, and that the

revival statute serves separate means as compared to the New
Jersey Code of Criminal Justice.  Further, while a "monetary
penalty likely promotes the traditional ends of punishment,
retribution and deterrence, to some degree, that alone is not
enough to characterize the penalty as penal in nature, rather
than civil." See Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.,
302 Fed. Appx. 115, 120-21 (3d Cir. 2008) (considering an Eighth
Amendment challenge to Section 1140 of the Social Security Act).
The revival statute is only of minimal deterrent value, if any,
as it applies only to a narrow range of previously extinguished
claims arising from past conduct.  Further, while its revival of
civil recourse, including punitive damages, may promote
retribution, the Court finds that it does not itself increase
penalties beyond those that have already existed.

Therefore, the Court holds that the punitive damages made
available under the revival statute do not implicate the Ex Post
Facto Clauses and, for the sake of completeness, that Defendant
has failed to provide "clearest proof" to override legislative
intent as to the civil nature of the revival statute.

**IV. Merits of Plaintiff's Claims**

Having rejected Defendant's challenges to the revival
statute, the Court moves to the merits of Plaintiff's claims.

In his reply to Plaintiff's opposition, Defendant raises
several concerns regarding the use of an alleged sexual assault

to trigger the revival window, including how such a determination may be made, and Plaintiff's purported failure to plead sexual assault as defined in the New Jersey Code of Criminal Justice. (ECF 13 at 3-5). These points are well taken and the Court agrees that in circumstances such as the case at bar, a two-part analysis is required. First, the plaintiff must demonstrate a prohibited triggering act pursuant to the revival statute and, only after such showing, may a court move on to the second prong of the analysis – the plaintiff's otherwise time-barred claims.

Therefore, while the Court agrees with Defendant that "Plaintiff must, at some point, demonstrate a commission of a sexual assault," (id. at 4) (emphasis in original), that point is not the dismissal stage. Federal courts sitting in diversity apply state substantive law, but federal procedural law. See Schmigel, 800 F.3d at 119. A plaintiff's burden at the dismissal stage is to sufficiently plead, not prove their case. See Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("[A] plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" (quoting Graff v. Subbiah Cardiology Assocs., Ltd., No. 08-207, 2008 WL 2312671, at *4 (W.D. Pa. June 4, 2008))); Tarrant v. Hamilton Twp. Sch. Dist.,

No. 16-7058, 2017 WL 3023211, at *5 (D.N.J. July 14, 2017)
(citing <u>Fowler</u> and finding that "[a]t the pleading stage . . .
Plaintiff is not required to <u>prove</u> the elements of her <u>prima
facie</u> case").

Applied here, sexual assault as defined in the New Jersey
Code of Criminal Justice may be found upon the commission of an
act of sexual penetration using coercion or "without the
victim's affirmative and freely-given permission."  N.J.S.A.
2C:14-2(c)(1).  Plaintiff alleges that Defendant served her a
beverage that caused her to lose consciousness, undressed her
despite her protestation, and then penetrated her vaginally with
his penis.  (ECF 1 ¶¶ 19-25).  While Plaintiff will be required
to demonstrate by a preponderance of the evidence that a sexual
assault occurred should this case proceed to trial, <u>see</u> <u>N.L. v.
P.C.L.</u>, No. A-1918-18T2, 2020 WL 2790422, at *1 (N.J. Super. Ct.
App. Div. May 29, 2020) (per curiam) (affirming the issuance of
a restraining order in a domestic matter upon the establishment
of two acts of sexual assault by a preponderance of the
evidence); <u>see also</u> <u>Gardner v. Pawliw</u>, 696 A.2d 599, 609 (N.J.
1997) (noting that a preponderance-of-the-evidence standard is
generally applicable to tort claims), the Court holds that
Plaintiff's allegations as pled are sufficient to make out a
plausible claim of sexual assault and survive dismissal.

Because Plaintiff has satisfied the threshold part of the

analysis, the Court will move to her claims.  Plaintiff's
Complaint alleges four substantive counts – assault, battery,
false imprisonment, and IIED – and demands punitive damages.
The Court holds that Plaintiff has sufficiently pled the
elements of her four substantive claims as well as sufficient
facts which if true could justify an award of punitive damages.
See Malleus, 641 F.3d at 563.

Under New Jersey law, common-law assault requires: (1) an
action intending to cause a harmful or offensive contact or
place a person in imminent apprehension of such contact; and (2)
the person is placed in imminent apprehension, see Leang v.
Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009)
(citing Wigginton v. Servidio, 734 A.2d 798 (N.J. Super. Ct.
App. Div. 1999)), while battery is premised "upon a
nonconsensual touching," id. (citing Perna v. Pirozzi, 457 A.2d
431 (N.J. 1983)).  Plaintiff alleges that Defendant physically
undressed her despite her protestation and then vaginally
penetrated her while she was falling in and out of
consciousness.  (ECF 1 at ¶¶ 23-25).  Such factual assertions –
which are to be accepted as true at this stage – are sufficient
to support Plaintiff's battery and assault claims.

Similarly, false imprisonment requires (1) arrest or
detention against a person's will and (2) lack of legal
authority or justification.  Leang, 969 A.2d at 1117 (citing

Mesgleski v. Oraboni, 748 A.2d 1130 (N.J. Super. Ct. App. Div. 2000)).  Constraint is the essential element of false imprisonment, not the use of physical force, therefore even words can cause sufficient constraint.  See Eivich v. E. Greenwich Twp., No. 1:20-cv-06851, 2021 WL 856883, at *4 (D.N.J. Mar. 8, 2021) (citing Earl v. Winne, 101 A.2d 535, 539 (N.J. 1954)).  Plaintiff alleges that Defendant served her what was represented as a non-alcoholic beverage and she thereafter felt nauseous, slipped in and out of consciousness, and was otherwise unable to move while she was undressed and assaulted.  (ECF 1 at ¶¶ 20-26).  The Court holds that Plaintiff adequately pleads that she was constrained by Defendant without legal authority or justification.

Next, to establish an IIED claim a plaintiff must prove (1) that the defendant acted intentionally or recklessly, (2) the conduct was "so 'extreme and outrageous . . . as to go beyond all possible bounds of decency,'" (3) proximate cause, and (4) severe emotional distress beyond which a reasonable person may be expected to endure.  Juzwiak v. Doe, 2 A.3d 428, 433 (N.J. Super. Ct. App. Div. 2010) (omission in original) (citing Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857 (N.J. 1988)).  An IIED claim may be premised on sexual conduct.  See Wilson v. Parisi, 633 A.2d 113, 115 (NJ. Super. Ct. App. Div. 1993) (reversing summary judgment in a New Jersey Law Against

Discrimination action in which a superior allegedly harassed, kissed, and fondled a subordinate).

Here, Plaintiff alleges that Defendant intentionally served her a beverage that caused her to lose consciousness and thereafter assaulted her, (ECF 1 at ¶¶ 20-26), and claims that as a result of Defendant's actions she has suffered permanent injuries including post-traumatic stress disorder, anxiety, depression, inability to sleep, and other injuries, (id. at ¶¶ 34-36). These allegations, taken as true, are sufficient to support Plaintiff's IIED claim at the dismissal stage.

Finally, pursuant to the Punitive Damages Act, a plaintiff may be awarded punitive damages only when it is proven "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a). The trier of fact determines whether punitive damages are warranted by considering factors including the likelihood of serious harm at the time of the conduct, the defendant's awareness of the likelihood of serious harm, and concealment of the conduct by the defendant. See 2A:15-5.12(b)(1), (2), (4). The Punitive Damages Act has been found to have codified common-law punitive-damages principles. See Rivera v. Valley Hosp., Inc., 280 A.3d

299, 310 (N.J. 2022).

Here, in addition to alleging that Defendant served her a beverage that caused her to lose consciousness, undressed her, and raped her, Plaintiff also claims that Defendant attempted to conceal these acts by threatening to file a police report against her, sue her for defamation, and harm her career.  (ECF 1 at ¶¶ 31-33).  The Court holds that those allegations, if proven, are sufficient to support Plaintiff's claim for punitive damages.  To summarize, the Court holds that Plaintiff's Complaint alleges facts sufficient to revive her otherwise time-barred claims, survive dismissal of those claims, and allow a claim for punitive damages to proceed.

In so doing, the Court limits its holding to the alleged incidents that took place in Atlantic City in August 1990. Defendant correctly contends in his supporting brief that Plaintiff fails to provide similar details with respect to allegations that Defendant fondled her during a theatrical exercise and that she was assaulted, battered, and drugged by Defendant on additional occasions.  (ECF 10-2 at 4 n.2).  This lack of clarity and specificity raises a fair doubt as to which acts Plaintiff relies upon in asserting this Court is the proper venue for the allegations in the four counts of the Complaint and if those other alleged acts are intended to form the basis of a separate cause of action.  See E. Controls, Inc. v.

33

Borysowski, No. 22-96, 2022 WL 740761, slip op. at 5 (D.N.J. Mar. 11, 2022) (recognizing that transfer, or even dismissal, for improper venue is within the discretion of district courts).[4] However, Plaintiff lumps together without reference to time or place all of the background facts when setting forth her four causes of action.

If Plaintiff intended the allegations related to Atlantic City to form the core allegations of each of the four counts – which would be sufficient for venue and is admittedly a fair reading of the Complaint – and merely offers the other allegations as evidence that such an assault occurred then she should say so in an amended pleading.[5]  If on the other hand, Plaintiff alleges these other acts to form the basis for a separate cause of action, her amended pleading should set forth when and where such acts occurred or be said to disavow them as standalone counts.  Accordingly, the Court will provide Plaintiff thirty days to file an amended complaint specifying

---

[4] The Court acknowledges that the uncertain location of these additional alleged incidents also implicates personal jurisdiction, but "because personal jurisdiction may be conferred by consent of the parties . . . a court may not sua sponte dismiss for want of personal jurisdiction." Jasper v. Bexar Cnty. Adult Det. Ctr., 332 Fed. Appx. 718, 719 (3d Cir. 2009) (omission in original) (quoting Zelson v. Thomforde, 412 F.2d 56, 59 (3d Cir. 1969)).

[5] The Court expresses no opinion at this time as to whether such evidence would be admissible at trial.  See Fed. R. Evid. 403, 404(b).

34

which acts she relies upon for establishing venue of each of the four counts in the Complaint and, to the extent that she intends to pursue them as standalone counts, the times and places of the non-Atlantic City allegations and setting them forth in separate counts.

**V. Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss, (ECF 10), will be denied.  Plaintiff will be provided thirty days to file an amended complaint to provide the clarity required above.

An Order consistent with this Opinion will be entered.


Date: January 3, 2023                    s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.